# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

NORTH ATLANTIC OPERATING
COMPANY, INC., et al.,

                Plaintiffs,

    v.

EBAY SELLER DEALZ_F0R_YOU, et
al.,

                Defendants.

Civil Action No. 17-10964

**Honorable Linda V. Parker**

## PLAINTIFFS' MOTION FOR
## DEFAULT JUDGMENT AND RELATED RELIEF

Pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2,

Plaintiffs North Atlantic Operating Company, Inc. and National Tobacco

Company, L.P. ("North Atlantic") respectfully move the Court for an Order

granting default judgment against the following grounds of "Non-Responding

Defendants" on all claims in North Atlantic's Complaint:

1.     eBay Seller dealz_f0r_you;

2.     eBay Seller shypanmar;

3.     eBay Seller ste-b7uvarr;

4.     Ray Farooqui and eBay Seller rafarooqu0;

5.      Steve Cisyk and eBay Seller sportstaz0937;

6.      eBay Seller swaggypoo544-7;

7.      James Eberhard and eBay Seller terrrrrapinstation;

8.      Michael Harrison and eBay Seller mikeybabsstore-1;

9.      Nathan Bartlett and eBay Seller mrnofun77;

10.     Craig Harvey and eBay Seller peglegcraig;

11.     philly phill world inc. and eBay Seller phillyphillworld;

12.     Ross Livaccari, Deb's Beauty Supply, and eBay Seller mira.hair.care;

13.     HIGHLEAF and eBay Seller 71_hilea;

14.     Eddy Garza and eBay Seller bladin4life123;

15.     Khurram Ilyas and eBay Seller houstrad;

16.     Amazon Seller PTL Sales;

17.     Amazon Seller Rolling Bargains Inc.;

18.     Amazon Seller SZ POWER;

19.     Amazon Seller The Virtuous Company;

20.     Amazon Seller Time.4.Toys;

21.     Nichole Roundtree, Yaqun Sun, Chinadirect International Trading CO, Amazon Seller NicholeRoundtree, and Amazon Seller CoCo-Code;

22.   Jack Krenicki, Andrew Krenicki Sr., Gifts 2 Shop, eBay Seller giftstoyourdoor, eBay Seller cardsfrfun, Amazon Seller gifts2shop, Bonanza Seller giftstoshop, and Bonanza Seller Backstrecords;

23.   Qadir Jangda and eBay Seller googly52;

24.   A.H, Rouhif Mossili, eBay Seller ah19612015, Amazon Seller R.M Store, AM.H/Smoking Accessories and Amazon Seller AM.H; and

25.   Sam Chawla, and eBay Seller schawla5.

North Atlantic also seeks an order under Federal Rule of Civil Procedure 65 and the Lanham Act, 15 U.S.C. § 1116, converting the preliminary injunctions against the Non-Responding Defendants into permanent injunctions.

A [Proposed] Order is submitted herewith as Exhibit 1.

Copies of unpublished cases are submitted herewith as Exhibit 2.

In support of this Motion, North Atlantic relies on the simultaneously filed Brief; Declaration of John Hood; and Declaration of Lyndsay S. Ott with Exhibits. As noted therein, the Non-Responding Defendants have not appeared *pro se* or through counsel, although all were served properly with the summonses, operative pleadings, and all case-initiating documents. There is ample basis for entering default judgment against them on all claims and issues in North Atlantic's Complaint, including findings of willful counterfeiting.

Because of the Non-Responding Defendants' failures to appear, there was no one with whom North Atlantic could confer under Local Rule 7.1.

All Non-Responding Defendants are being served simultaneously with filing.

WHEREFORE, North Atlantic respectfully requests an Order:

A. Granting North Atlantic's Motion in its entirety;

B. Entering default judgment in North Atlantic's favor against each of the Non-Responding Defendants under Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2;

C. Awarding North Atlantic statutory damages in the amount of $200,000, jointly and severally per group of Non-Responding Defendants, for a total statutory damages award of $5,000,000, under the Lanham Act, 15 U.S.C. § 1117;

D. Awarding North Atlantic its reasonable attorneys' fees, costs, and investigative fees incurred in this action, including those incurred in making this Motion, under the Lanham Act, 15 U.S.C. § 1117, or the Copyright Act, 17 U.S.C. § 505;

E. Continuing alternative service via email, other electronic means, and/or by overnight courier, under Federal Rule of Civil Procedure 4, for the reasons

4

previously adopted by this Court in issuing the temporary restraining order [DKT. 16] ("T.R.O.") (*see* pgs. 9-10);

F. Releasing the $10,000 bond that secures the preliminary injunctions against the Non-Responding Defendants; and,

G. Converting the preliminary injunctions against the Non-Responding Defendants into permanent injunctions under Federal Rule of Civil Procedure 65 and the Lanham Act, 15 U.S.C. § 1116, forever restraining the Non-Responding Defendants and their officers, agents, servants, employees, and attorneys, and other persons in active concert or participation with them, who receive actual notice of the permanent injunction through personal service or otherwise, from, directly or indirectly, anywhere in the world:

   a. Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any counterfeit or infringing ZIG-ZAG® brand cigarette paper products, including but not limited to ZIG-ZAG® 1 ¼ Size French Orange ("ZIG-ZAG® Orange"), or any cigarette paper products bearing:

    i.   Infringing or counterfeit versions of the ZIG-ZAG®

        Trademarks[1], the NAOC Trademarks[2], the NAOC© Copyright[3],

        and/or the ZIG-ZAG® Orange Trade Dress[4], which appear

        alone or in combination on all cartons and booklets of ZIG-

        ZAG® Orange cigarette paper products distributed by North

        Atlantic in the United States; or

    ii.   The false statement that such products are "Distributed by

        North Atlantic Operating Company, Inc." or otherwise under

        the control or supervision of North Atlantic, when they are not;

---

[1] Defined as the marks of U.S. Registration Nos. 610,530 (ZIG-ZAG (stylized)); 1,127,946 (ZIG-ZAG (word mark)); 2,169,540 (Smoking Man Design (Circle Border)); 2,169,549 (Smoking Man Design (No Border)).

[2] Defined as the marks of U.S. Registration Nos. 2,664,694 and 2,664,695 (NORTH ATLANTIC OPERATING COMPANY INC. and Gear Design); and 2,610,473 and 2,635,446 (NORTH ATLANTIC OPERATING COMPANY (Word Mark)).

[3] Defined as the work of the federal copyright registration for the visual material/computer graphic titled "North Atlantic Operating Company, Inc." (VAu464-855).

[4] Defined as the distinctive design elements comprising the overall look-and-feel of the ZIG-ZAG® Orange packaging (booklets and cartons), including at least the following: (1) ZIG-ZAG® and NAOC® Trademarks, (2) NAOC© Copyright, (3) gold-fill lettering and design elements, (4) French phrases such as "Qualite Superieure" and "Braunstein Freres France," and (5) the express statements that the products are "Made in France" or "Imported French", or "Distributed by North Atlantic Operating Company, Inc."

b.  Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any purported North Atlantic products that are not actually produced, imported, or distributed under North Atlantic's control or supervision, or approved for sale in the United States by North Atlantic in connection with the ZIG-ZAG® Trademarks, the NAOC® Trademarks, the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress;

c.  Committing acts calculated to cause purchasers to believe that counterfeit or infringing ZIG-ZAG® cigarette paper products, including counterfeit ZIG-ZAG® Orange, originate with North Atlantic when they do not;

d.  In any way infringing or damaging the ZIG-ZAG® or NAOC® Trademarks, the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress, or the value or goodwill associated therewith;

e.  Attempting, causing, or assisting in any of the above-described acts, including but not limited to, enabling others in the above-described acts or passing on information to allow them to do so; and

f. Forming or causing to be formed any corporation or other entity that

engages in the above-described acts; and

H. Granting North Atlantic all other further relief in its favor that the Court

deems just or proper.

Dated: January 22, 2019        Respectfully submitted,

By: /s/ Lyndsay S. Ott
WARNER NORCROSS + JUDD LLP
Lyndsay S. Ott (P72949) (lott@wnj.com)
45000 River Ridge Drive, Suite 300
Clinton Twp., Michigan 48038
Tel.: 248-784-5080

OF COUNSEL:
Marcella Ballard (MBallard@Venable.com)
Victoria R. Danta (VRDanta@Venable.com)
VENABLE LLP
1270 Avenue of the Americas, 24th Fl.
New York, NY 10020
Tel.: 212-307-5500

*Attorneys for Plaintiffs North Atlantic
Operating Company, Inc. and
National Tobacco Company, L.P.*

18052474-3

8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NORTH ATLANTIC OPERATING COMPANY, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> EBAY SELLER DEALZ_F0R_YOU, et al., <br><br> Defendants. | Civil Action No. 17-10964 <br><br> **Honorable Linda V. Parker** |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT AND RELATED RELIEF**

## ISSUES PRESENTED

1.  Should the Court enter default judgment against each Non-Responding Defendant for each claim in the Complaint, due to the failure to plead or otherwise defend in this action, under Federal Rule of Civil Procedure 55(b)(2)?

    <u>Answer:</u>     YES

2.  Is the Court justified in awarding statutory damages of $25,000 per counterfeit mark, multiplied by eight counterfeit marks, for a total statutory damages award of $200,000, jointly and severally per group of Non-Responding Defendants, under the Lanham Act?

    <u>Answer:</u>     YES

3.  Should the Court award Plaintiffs reasonable attorneys' fees and costs, and investigators' costs, under the Lanham Act and/or Copyright Act?

    <u>Answer:</u>     YES

4.  Should the Court release the bond and convert all preliminary injunctions against the Non-Responding Defendants into permanent injunctions under Federal Rule of Civil Procedure 65 and the Lanham Act?

    <u>Answer:</u>     YES

5.  Should the Court continue alternative service *via* email?

    <u>Answer:</u>     YES

# CONTROLLING AUTHORITY

Federal Rule of Civil Procedure 55 (default judgment)

Lanham Act, 15 U.S.C. § 1117 (damages for trademark infringement)

Copyright Act, 17 U.S.C. § 505 (damages for copyright infringement)

Federal Rule of Civil Procedure 65 (injunctive relief)

Lanham Act, 15 U.S.C. § 1116 (injunctive relief in trademark infringement cases)

Federal Rule of Civil Procedure 4 (service)

MCR 2.105(I) (service)

United States District Court Eastern District of Michigan Local Civil Rule 55.2

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................. 1

**UNCONTESTED FACTS** .................................................................... 3

**ARGUMENT** ...................................................................................... 8

  A.  North Atlantic Is Entitled To Default Judgment On All Counts ..................... 8

  B.  The Complaint Establishes Liability For Trademark And Trade Dress Infringement .................................................................................... 9

  C.  The Complaint Establishes Liability For Copyright Infringement ............... 11

  D.  The Complaint Establishes Liability For Infringement/Unfair Competition Under Michigan/Common Law .......................................................... 11

  E.  The Court Should Award Statutory Damages ............................... 12

    a.  *North Atlantic's Request* ....................................................... 13

    b.  *North Atlantic's Request Is Fair And Reasonable* ..................... 15

    c.  *Factual Analysis Of North Atlantic's Request* ......................... 17

  F.  The Court Should Award Reasonable Fees And Costs ................ 19

  G.  The Court Should Continue Alternative Service Via Email ......... 20

  H.  The Court Should Release The Bond And Enter Permanent Injunctions ..... 20

**CONCLUSION** ................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*,
280 F.3d 619 (6th Cir. 2002) .................................................................. 10

*Antoine v. Atlas Turner, Inc.*,
66 F.3d 105 (6th Cir. 1995) ..................................................................... 8

*Chi-boy Music v. Charlie Club, Inc.*,
930 F.2d 1224, 1229 (7th Cir. 1991) ..................................................... 13

*Coach Servs. v. Wireless Star, Inc.*,
No. 12-11223, 2013 U.S. Dist. LEXIS 40361 (E.D. Mich. Feb. 11, 2013) ............ 16

*Coach, Inc. v. Bros. Gas & Mart, Inc.*
No. 12-cv-10609, 2013 U.S. Dist. LEXIS 49944 (E.D. Mich. Apr. 8, 2013) ........ 16

*Coach, Inc. v. Chouman's Ass'n*,
No. 11-cv-15665, 2012 U.S. Dist. LEXIS 181896, at *7-9 (E.D. Mich. Dec. 26, 2012) .......................................................................................... 16

*Coach, Inc. v. Da Hook Up Ltd.*,
No. 10-cv-11710 (E.D. Mich. July 11, 2011) ......................................... 16

*Coach, Inc. v. O'Brien*,
No. 10-cv-6071, 2012 U.S. Dist. LEXIS 52565 (S.D.N.Y. Apr. 13, 2012) ........... 16

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*,
109 F.3d 275 (6th Cir. 1997) ................................................................... 9

*Ferrari S.P.A. v. Roberts*,
944 F.2d 1235 (6th Cir. 1991) ............................................................... 10

*Fila U.S.A. v. Run Run Trading Corp.*,
No. 95 Civ. 7144, 1996 WL 271992 (S.D.N.Y. May 21, 1996) .............................. 19

*Ford Motor Co. v. Cross*,
441 F. Supp. 2d 837 (E.D. Mich. 2006) ............................................. 8, 13

*Ford Motor Co. v. Lloyd Design Corp.,*
22 Fed. App'x 464 (6th Cir. 2002) ........................................................................ 9, 10

*Goulas v. Maxmo, Inc.,*
No. 14-cv-10993, 2014 WL 2515217 (E.D. Mich. June 4, 2014) .......................... 12

*Homeowners Grp. Inc. v. Home Mktg. Specialists, Inc.,*
931 F.2d 1100 (6th Cir. 1991) ............................................................................... 12

*Janet Travis, Inc. v. Preka Holdings, L.L.C.,*
306 Mich. App. 266, 856 N.W.2d 206 (C.A. Mich. 2014) ............................... 11, 12

*Lexmark Intern., Inc. v. Static Control Components, Inc.,*
387 F.3d 522 (6th Cir. 2004) ................................................................................. 11

*Microsoft Corp. v. Compusource Dist. Inc.,*
115 F. Supp. 2d 800, 811 (E.D. Mich. 2000) .................................................... 13, 19

*North. Atl. Operating Co., Inc. v. Evergreen Dist., LLC,*
No. 13-cv-4974-ERK-VMS (E.D.N.Y. Jan. 5, 2015) ............................................. 15

*North Atl. Oper. Co., Inc. v. ABC Mini Market,*
No. 12-cv-12063-FDS (D. Mass. Oct. 22, 2013) .................................................... 15

*North Atl. Oper. Co., Inc.,* et al. *v. Walter C. Scott* et al.,
No. 16-12076-TGB-DRG (E.D. Mich. Sept. 28, 2018) ...................................... 3, 14

*North Face Apparel Corp. v. Moler,*
No. 12-cv-6688, 2015 U.S. Dist. LEXIS 93133 (S.D.N.Y. July 16, 2015) ............ 17

*Otter Prods., LLC v. Berrios,*
No. 13-cv-4384, 2013 U.S. Dist. LEXIS 147139 (C.D. Cal. Oct. 10, 2013) .... 16, 17

**Statutes**

15 U.S.C. § 1114 ......................................................................................................... 6

15 U.S.C. § 1114(1) .................................................................................................... 9

15 U.S.C. § 1117 .................................................................................................... 3, 19

vi

15 U.S.C. § 1117(c) ............................................................................................. 13

15 U.S.C. § 1125(a) .............................................................................................. 6

17 U.S.C. § 505 ................................................................................................ 3, 19

17 U.S.C. §§ 101 *et seq.* ..................................................................................... 6

28 U.S.C. § 1331 .................................................................................................. 8

MCL § 445.903 ..................................................................................................... 6

**Rules**

FED. R. CIV. P. 55(a) ...................................................................................... 2, 7, 8

# INTRODUCTION

North Atlantic exclusively distributes ZIG-ZAG® brand cigarette papers.

North Atlantic sued Defendants herein, because they were brazenly selling

counterfeit ZIG-ZAG® cigarette papers online. Some Defendants cooperated, and

accordingly, were dismissed from the lawsuit. Others ignored the lawsuit entirely,

presumably because it seemed more advantageous than participating and disclosing

the full extent of their counterfeiting.

North Atlantic has obtained Clerk's Entries of Default against these "Non-

Responding Defendants"[1] and now seeks default judgment against them under

---

[1] Defined as the following groups of Defendants: (1) eBay Seller dealz_f0r_you;
(2) eBay Seller shypanmar; (3) eBay Seller ste-b7uvarr; (4) Ray Farooqui and
eBay Seller rafarooqu0; (5) Steve Cisyk and eBay Seller sportstaz0937; (6) eBay
Seller swaggypoo544-7; (7) James Eberhard and eBay Seller terrrrrapinstation; (8)
Michael Harrison and eBay Seller mikeybabsstore-1; (9) Nathan Bartlett and eBay
Seller mrnofun77; (10) Craig Harvey and eBay Seller peglegcraig; (11) philly phill
world inc. and eBay Seller phillyphillworld; (12) Ross Livaccari, Deb's Beauty
Supply, and eBay Seller mira.hair.care; (13) HIGHLEAF and eBay Seller
71_hilea; (14) Eddy Garza and eBay Seller bladin4life123; (15) Khurram Ilyas and
eBay Seller houstrad; (16) Amazon Seller PTL Sales; (17) Amazon Seller Rolling
Bargains Inc.; (18) Amazon Seller SZ POWER; (19) Amazon Seller The Virtuous
Company; (20) Amazon Seller Time.4.Toys; (21) Nichole Roundtree, Yaqun Sun,
Chinadirect International Trading CO, Amazon Seller NicholeRoundtree, and
Amazon Seller CoCo-Code; (22) Jack Krenicki, Andrew Krenicki Sr., Gifts 2
Shop, eBay Seller giftstoyourdoor, eBay Seller cardsfrfun, Amazon Seller
gifts2shop, Bonanza Seller giftstoshop, and Bonanza Seller Backstrecords; (23)
Qadir Jangda and eBay Seller googly52; (24) A.H, Rouhif Mossili, eBay Seller
ah19612015, Amazon Seller R.M Store, AM.H/SMOKING ACSSORIES, and
Amazon Seller AM.H; and (25) Sam Chawla, and eBay Seller Schawla5.

Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2, based on the well-pled, constructively admitted allegations in the Complaint. [DKT. 1]. North Atlantic further seeks an order, under Federal Rule of Civil Procedure 65 and the Lanham Act, 15 U.S.C. § 1116, converting preliminary injunctions against the Non-Responding Defendants into permanent injunctions, forever enjoining and restraining the Defendants' counterfeiting. North Atlantic further requests that the Court continue to permit service via email, or service by other electronic means.

Because the Non-Responding Defendants chose to ignore this lawsuit, and non-party Dunhuang Group D/B/A DHGate, DHLink, DHPort and DHpay has refused to comply with a subpoena *duces tecum*, North Atlantic has no evidence to establish actual damages in terms of Defendants' illicit profits and North Atlantic's lost profits. Thus, North Atlantic seeks statutory damages, for the very reason the Lanham Act provides statutory damages:  to provide a measure of damages when counterfeiters conceal actual measures of damages. Specifically, North Atlantic seeks $25,000 per registered counterfeited trademark, multiplied by the eight counterfeit trademarks on Defendants' counterfeit ZIG-ZAG® cigarette papers, for a total award of $200,000 per group of Non-Responding Defendants. The award is reasonable and justified, based on the need for deterrence, as courts have held in similar anti-counterfeiting cases. *See, e.g., North Atl. Oper. Co. Inc.*, et al. *v. JingJing Huang*, et al., Case No. 15-14013-TGB [DKT. 276] (E.D. Mich. May 9,

2

2017) (awarding North Atlantic statutory damages of $25,000 per mark, for a total damages award of $200,000 jointly and severally per group of defaulted defendants); *North Atl. Oper. Co., Inc.,* et al. *v. Walter C. Scott* et al., Case No. 16-12076-TGB-DRG [DKT. 119] (E.D. Mich. Sept. 28, 2018) (same). North Atlantic also seeks reimbursement for its reasonable attorneys' fees and costs, including those incurred in making this Motion under the Lanham Act (15 U.S.C. § 1117) or Copyright Act (17 U.S.C. § 505).

As argued below, North Atlantic meets all requirements for such relief and is entitled to it. The Court should enter default judgment against each Non-Responding Defendant; award North Atlantic requested statutory damages; award North Atlantic its reasonable attorneys' fees and costs, and investigator costs (which are to be determined); continue service by email and other electronic means; and permanently join future counterfeiting.

## UNCONTESTED FACTS[2]

North Atlantic sells various smoking products, including the popular ZIG-ZAG® brand cigarette paper products, in the United States. *See* Compl. ¶¶ 216-19; www.zigzag.com/products. At issue in this case are North Atlantic's iconic ZIG-ZAG® Orange cigarette paper products, shown below:

---

[2] These facts come from North Atlantic's Complaint [DKT. 1], deemed admitted because of the Non-Responding Defendants' default.

3

  

*See id.* ¶¶ 220-26 (describing the ZIG-ZAG® Orange products, their packaging, and their authorized distribution channels). All authentic ZIG-ZAG® Orange displays eight registered trademarks, four of which are licensed from the registrant, Bolloré, S.A.:

   1.    U.S. TM Reg. No. 610,530 for ZIG-ZAG (stylized);

   2.    U.S. TM Reg. No. 1,127,946 for ZIG-ZAG (word mark);

   3.    U.S. TM Reg. No. 2,169,540 for the Smoking Man Design; and

   4.    U.S. TM Reg. No. 2,169,549 for the Smoking Man Design;

and four that North Atlantic owns itself:

   5.    U.S. TM Reg. No. 2,664,694 for NORTH ATLANTIC
         OPERATING COMPANY, INC. and Gear Design;

   6.    U.S. TM Reg. No. 2,664,695 for NORTH ATLANTIC
         OPERATING COMPANY, INC. and Gear Design;

   7.    U.S. TM Reg. No. 2,610,473 for NORTH ATLANTIC
         OPERATING COMPANY (word mark); and

   8.    U.S. TM Reg. No. 2,635,446 for NORTH ATLANTIC
         OPERATING COMPANY (word mark).

4

*Id.* ¶¶ 227-233, Exhs. A & B thereto (attaching copies of relevant U.S. Patent and Trademark Office records, including registration certificates which are *prima facie* evidence of ownership/validity of the registered mark) (the "ZIG-ZAG® Trademarks" and the "NAOC® Trademarks," respectively).

Authentic ZIG-ZAG® Orange also displays a copyright-protected graphic titled "North Atlantic Operating Company, Inc." and protectable trade dress featuring the ZIG-ZAG® and NAOC® Trademarks, and (1) gold-fill lettering and design elements, (2) French phrases such as "Qualite Superieure" and "Braunstein Freres France," and (3) the express statement that authentic products are "Made in France" or "Imported French" and "Distributed by North Atlantic Operating Company, Inc." *Id.* ¶¶ 234-242, Exh. C thereto (federal copyright registration for the "NAOC© Copyright"), Exh. D thereto (photographs of the "ZIG-ZAG® Orange Trade Dress").

Because North Atlantic's authentic ZIG-ZAG® Orange displays these marks/other source identifiers, so do counterfeit products – including all counterfeit ZIG-ZAG® Orange sold by the Non-Responding Defendants. *See id.* ¶¶ 243-258 (describing North Atlantic's anti-counterfeiting investigation; online distribution of counterfeit products; and physical features common to counterfeit products), 259-279 (describing online buys from Defendants, including all Non-Responding Defendants), Exh. E thereto (chart listing all known identifying details

5

about the Non-Responding Defendants and summarizing known sales, dates of sales, and sale price). North Atlantic thus sued Defendants for: (1) federal trademark infringement (15 U.S.C. § 1114); (2) federal common-law trade dress infringement, false designation of origin, and unfair competition (*id.* § 1125(a)); (3) federal copyright infringement (17 U.S.C. §§ 101 *et seq.*); (4) improper use under MCL § 445.903; and (5) common-law unfair competition. North Atlantic's Complaint asserts all these claims, and that all violations were <u>willful</u>, because of obvious price differences between counterfeit and authentic products; notable physical differences between counterfeit and authentic products; different manufacturing and distribution channels (*e.g.*, the counterfeit products state "Made in France," when they are imported from China); and the steps Defendants already took to hide their identities and conceal themselves from liability. *See id.* ¶¶ 280-87. For example, Defendants, including all Non-Responding Defendants, operate anonymously online, using seller names and aliases that conceal their identities and addresses and that for the most part are not associated with actual businesses. In one manner of thinking, the Non-Responding Defendants simply continued their evasive, willful behavior by choosing to ignore the lawsuit rather than respond to it. Simultaneously with filing the Complaint, North Atlantic moved, *ex parte*, for an emergency temporary restraining order, an account and asset freeze seizure order, an order to show cause for preliminary injunction, and an order for

alternative service via email and other electronic means. *See* DKTS. 3-6. The Court

granted North Atlantic's *ex parte* motion and permitted alternative service by

"email, other electronic means, and/or by overnight courier." [DKT. 16, pg. 9-10].

Many Defendants responded, as required, and settled with North Atlantic,

establishing that alternative service was effective as to them. Other Defendants did

not respond at all, or responded initially and then stopped responding. Those

Defendants are the Non-Responding Defendants herein.

In summer of 2018, after giving all Non-Responding Defendants an

extended time period to settle and/or respond, North Atlantic obtained entries of

default against them under Federal Rule of Civil Procedure 55(a). *See* Ott Decl. ¶¶

19-20, DKTS. 138-192. North Atlantic notified all Non-Responding Defendants of

the intention to seek entry of default, as well as default judgment, making

settlement offers to many of them. *Id.*, ¶ 21. No Non-Responding Defendants

responded or settled. *Id.* ¶¶ 18, 21. Moreover, upon information and belief, Non-

Responding Defendant has reduced capacity, *i.e.*, is an infant, an incompetent

person, or an active U.S. service member. *Id.* ¶ 18. Further, upon information and

belief, the Non-Responding Defendants do not have any excuse for failing to

appear and defend, and all should be held accountable for their choice to default.

## ARGUMENT

### A. North Atlantic Is Entitled To Default Judgment On All Counts

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Once the Court Clerk enters default, all well-pleaded allegations in the operative pleading are admitted, except those relating to damages. *See North Atl. Oper. Co., Inc. v. JingJing Huang*, No. 15-14013-TBG [DKT. 276], at *6 (E.D. Mich. May 9, 2017) ("*JingJing Huang*") (citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995)).[3]  While the decision to grant or deny default judgment is within a court's sound discretion (*see* FED. R. CIV. P. 55), a court normally should enter default judgment if the allegations in the operative pleading are sufficient to support a finding of liability. *Id.*; *see also Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006).  Here, without a doubt, North Atlantic's Complaint establishes liability.[4]

---

[3]    Courtesy copies of all unpublished cases are attached to the Motion as Exhibit 2.

[4]    The Complaint also establishes that this Court has subject matter and personal jurisdiction over Defendants. *See* 28 U.S.C. § 1331; Compl. ¶¶ 7-10 (pleading that Defendants have continuous, systematic, and substantial contacts within the State of Michigan, including doing business in Michigan and directing sales of counterfeit ZIG-ZAG® Orange into Michigan).

## B. The Complaint Establishes Liability For Trademark And Trade Dress Infringement

North Atlantic asserts two claims for trademark infringement under the Lanham Act. First, it pleads infringement of the registered ZIG-ZAG® and NAOC® Trademarks under Section 32(I), 15 U.S.C. § 1114 (infringement of a registered mark). Compl. ¶¶ 294-300. Second, it pleads infringement of the common-law ZIG-ZAG® Orange Trade Dress under Section 43(a) (infringement of an unregistered mark). *Id.* ¶¶ 301-308. North Atlantic is entitled to default judgment on both Counts.

To establish liability for trademark infringement, North Atlantic must show that (1) it owns a valid, protectable trademark; (2) the Non-Responding Defendants used that mark in commerce without North Atlantic's consent; and (3) there was a likelihood of confusion. 15 U.S.C. § 1114(1); *Ford Motor Co. v. Lloyd Design Corp.*, 22 Fed. App'x 464, 468 (6th Cir. 2002); *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). The Complaint pleads that North Atlantic has exclusive rights to use the ZIG-ZAG® Trademarks for cigarette paper products; that it owns the NAOC® Trademarks for cigarette paper products; and that all such marks are registered on the Principal Register. *See* discussion, *supra,* "Uncontested Facts." The Complaint also pleads that each Non-Responding Defendant sold—either directly or indirectly to North Atlantic—counterfeit ZIG-ZAG® brand cigarette paper products and that the

9

packaging contains counterfeit versions of North Atlantic's ZIG-ZAG® and NAOC® Trademarks. Where a defendant uses a counterfeit mark, "likelihood of confusion is presumed." *Ford Motor Co.*, 22 Fed. App'x at 486 (holding that it is unnecessary to analyze the likelihood of confusion factors in counterfeiting cases). Thus, North Atlantic establishes entitlement to default judgment on its trademark infringement claims.

North Atlantic also pleads that it owns protectable common-law trade dress in the appearance of the ZIG-ZAG® Orange packaging; that the trade dress is distinctive; that it is primarily non-functional; and that all Defendants' counterfeit packaging is (at least) confusingly similar. *See Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1238-39 (6th Cir. 1991) (elements of trade dress infringement are similar to elements of trademark infringement); *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). North Atlantic further alleges that the counterfeit products are designed to look exactly the same as North Atlantic's trade dress to unsuspecting consumers, and that Defendants' products and packaging are fake reproductions. Thus, North Atlantic establishes its entitlement to default judgment for common-law for trade dress infringement.[5] Therefore, North Atlantic is entitled to default judgment on all Lanham Act claims.

---

[5] Relatedly, North Atlantic establishes the falsity of the statement: "Distributed by North Atlantic Operating Company, Inc." on the counterfeit packaging. This

10

## C. The Complaint Establishes Liability For Copyright Infringement

To establish liability for copyright infringement, North Atlantic must show

that (1) it owns a valid copyright, and (2) the defendant copied the copyrighted

work. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534

(6th Cir. 2004). Ownership of a federal copyright registration creates the

presumption that plaintiff owns a valid copyright. *Id.* Here, North Atlantic pleads

that it owns the registered NAOC© Copyright (*see* Compl., Ex. C thereto); that the

NAOC© Copyright appears on all authentic ZIG-ZAG® Orange sold in the United

States; and that the NAOC© Copyright also appears on the counterfeit products,

without authorization. Furthermore, all sales took place over a decade after the

copyright was registered in 2002. Thus, North Atlantic establishes entitlement to

default judgment on its copyright infringement claim.

## D. The Complaint Establishes Liability For Infringement/Unfair Competition Under Michigan/Common Law

Michigan law also prohibits trademark infringement/unfair competition

when a defendant uses a plaintiff's trademark without authorization. *Janet Travis,*

*Inc. v. Preka Holdings, L.L.C.*, 306 Mich. App. 266, 270-71, 856 N.W.2d 206,

212-13 (C.A. Mich. 2014). A plaintiff who alleges infringement/unfair

competition under Michigan state law must show that: (1) its mark is valid, (2) it

---

establishes the Non-Responding Defendants' liability for false designation of
origin and unfair competition, as well.

11

has priority in the mark, (3) it is likely that consumers will confuse defendant's mark with its own, and (4) the defendant used the allegedly infringing mark. *See Janet Travis, Inc.*, 306 Mich. App. at 270; *see also Goulas v. Maxmo, Inc.*, No. 14-cv-10993, 2014 WL 2515217, at *3 (E.D. Mich. June 4, 2014) (granting default judgment and stating that the "Court undertakes the same analysis for . . . trademark infringement, unfair competition, common law trademark infringement or a violation of the MCPA") (internal citations omitted). The same factors establishing liability under the Lanham Act would establish liability under Michigan state and common law for trademark infringement and unfair competition. *See Janet Travis, Inc.*, 306 Mich. App. at 275-76 (collecting cases stating the federal, and Michigan statutory and common law tests for trademark infringement, and unfair competition are the same); *accord Homeowners Grp. Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1104-05 (6th Cir. 1991). For the reasons discussed above with respect to North Atlantic's federal trademark and trade dress infringement claims, North Atlantic establishes entitlement to default judgment on its Michigan statutory and common-law infringement and unfair competition claims.

## E. The Court Should Award Statutory Damages

Under the Lanham Act, a trademark owner can elect to recover statutory damages in lieu of actual damages for the use of a counterfeit mark. *See* 15 U.S.C.

12

§ 1117(c); *see also Microsoft Corp. v. Compusource Dist. Inc.*, 115 F. Supp. 2d 800, 811 (E.D. Mich. 2000) (awarding plaintiff $50,000 in statutory damages for each of eight counterfeited marks, for a total statutory damages award of $400,000). In non-willful infringement cases, statutory damages are "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold . . . ." 15 U.S.C. § 1117(c). In willful infringement cases, the maximum increases to $2,000,000 per counterfeit mark per type of goods. *Id.* § 1117(c)(2). This court has wide discretion to award statutory damages, including significant awards designed, in part, to promote deterrence. In similar default cases involving trademark infringement, courts considered many factors, including willfulness and the fairness to defendants. *Microsoft Corp.*, 115 F. Supp. 2d at 811 (citing *Chi-boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991)). Deterrence also is a proper objective. *See, e.g., Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852-53 (E.D. Mich. 2006). The Court should strongly weigh the deterrence factor here, because the Non-Responding Defendants willfully counterfeited, then willfully ignored this lawsuit and the Court's authority, further frustrating North Atlantic's ability to get relief.

### a. *North Atlantic's Request*

North Atlantic requests statutory damages of $25,000 per registered mark, multiplied by eight counterfeit marks on the counterfeit ZIG-ZAG® Orange

packaging, for a total damages award of $200,000, jointly and severally per group of Non-Responding Defendants. To support this request, North Atlantic respectfully notes that the Court awarded identical statutory damages in two near-identical cases: (1) *JingJing Huang,* and (2) *North Atl. Oper. Co., Inc. v. Walter C. Scott*, No. 16-12076-TGB-DRG [DKT. 119] (E.D. Mich. Sept. 28, 2018) ("*Walter C. Scott*"). In those cases, as here, the non-responding defendants willfully counterfeited North Atlantic's flagship product, ZIG-ZAG® Orange, online, tricking customers into buying low-quality counterfeit goods when they expected to purchase North Atlantic's high-quality authentic goods. As the Court noted in *JingJing Huang*: "This is the most egregious form of infringement—indeed the most lucrative—and calls for a damages award that will serve as a forceful deterrent." *Id.* pg. 12.

Like their predecessors, these Non-Responding Defendants chose not to respond to this lawsuit when the Federal Rules dictate they must respond. They left North Atlantic "to grasp in the shadows for sales statistics that Defendants could have produced (and would have been required to produce had they responded to the lawsuit)." *Id.* This deprived North Atlantic of the ability to calculate actual damages in terms of illicit and lost profits. "[I]t is unfair to [North Atlantic] that it must watch its trademarks suffer infringement, pursue legal remedies, prove its

case, and then be frustrated in its attempts to obtain information as to its damages by the same defendants' dilatory and non-responsive tactics." *Id.*

Further, because of the Non-Responding Defendants evasiveness, North Atlantic made, and continues to make, a good-faith effort to uncover actual damages through the use of a non-party subpoena *duces tecum*. As the Court is aware, North Atlantic's non-party subpoena remains unanswered, and accordingly, North Atlantic has no other means of uncovering its actual damages.

### b. *North Atlantic's Request Is Fair And Reasonable*

North Atlantic's request is fair, reasonable, and supported by relevant case law, including *JingJing Huang* and *Walter C. Scott*. "[I]t neither sinks Defendants for eternity nor lets them sail off into the sunset without paying a price for their counterfeiting." *Id.*, pg. 12. North Atlantic received similarly high statutory damages awards in several other factually analogous cases involving the same registered trademarks and copyright, and common-law trade dress. *See, e.g., North Atl. Oper. Co., Inc. v. ABC Mini Market*, No. 12-cv-12063-FDS (D. Mass. Oct. 22, 2013) (awarding North Atlantic seven-figure statutory damages of $1,750,000, plus its "attorneys' fees and costs in an amount to be determined"); *North Atl. Oper. Co., Inc. v. Evergreen Distr., LLC*, No. 13-cv-4974-ERK-VMS (E.D.N.Y. Jan. 5, 2015) (awarding six-figure statutory damages of $10,000 per mark, multiplied by eight counterfeit marks, trebled because of defendants' willfulness),

*report and recommendation adopted,* Order entered Jan. 28, 2015 (total statutory

damages award over $240,000).

In other cases in this judicial district, courts awarded similarly high statutory

damages. For example, in *Coach, Inc. v. Chouman's Ass'n,* the court awarded

plaintiff $1,500,000 in statutory damages, citing: (i) the number of trademarks

counterfeited (ten); (ii) the types of goods involved (three); (iii) the degree of

willfulness (inferred from the defendants' default); (iv) the likely profits

(estimated, because defendants defaulted); (v) the plaintiff's reputational harm

(significant, because of plaintiff's historical investment in its marks); and (vi)

amounts awarded in "similar cases."[6]   No. 11-cv-15665, 2012 U.S. Dist. LEXIS

181896, at *7-9 (E.D. Mich. Dec. 26, 2012).   In online counterfeiting cases, courts

awarded significant statutory damages. *See, e.g., Otter Prods., LLC v. Berrios,* No.

---

[6]   The "similar cases" include: *Coach, Inc. v. Bros. Gas & Mart, Inc.* No. 12-cv-10609, 2013 U.S. Dist. LEXIS 49944, at *7-8 (E.D. Mich. Apr. 8, 2013) (awarding plaintiff $50,000 per counterfeit mark for a total of $500,000 in statutory damages); *Coach Servs. v. Wireless Star, Inc.,* No. 12-11223, 2013 U.S. Dist. LEXIS 40361, at *3-5 (E.D. Mich. Feb. 11, 2013) (awarding plaintiff $118,000 per counterfeit item, for a total statutory damages award of $2,000,000), *recommendation adopted by, and judgment entered by,* 2013 U.S. Dist. LEXIS 39206, at *2 (E.D. Mich. Mar. 21, 2013); *Coach, Inc. v. Da Hook Up Ltd.,* No. 10-cv-11710 (E.D. Mich. July 11, 2011) (awarding plaintiff $300,000 per counterfeit mark, or $1,200,000 in statutory damages); and *Coach, Inc. v. O'Brien,* No. 10-cv-6071, 2012 U.S. Dist. LEXIS 52565, at *9-10 (S.D.N.Y. Apr. 13, 2012) (awarding Coach approximately $83,000 per counterfeit mark *x* three marks for $249,000 in statutory damages).

13-cv-4384, 2013 WL 5575070, at *13 (C.D. Cal. Oct. 10, 2013) (awarding statutory damages of $100,000 per counterfeit mark for six marks, for a total award of $600,000); *North Face Apparel Corp. v. Moler*, No. 12-cv-6688, 2015 U.S. Dist. LEXIS 93133 (S.D.N.Y. July 16, 2015) (awarding statutory damages of $1,000,000 per mark for 11 marks, for a total statutory damages award of $11,000,000). These courts considered such factors as: (1) "the expenses saved and the profits reaped"; (2) "the revenues lost by the plaintiff"; (3) "the value of the [trademark]"; (4) "the deterrent effect on others besides the defendant"; (5) "whether the defendant's conduct was innocent or willful"; (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced"; and (7) "the potential for discouraging the defendant." *Id.* at *7. The courts noted that defendants operated numerous websites selling counterfeit goods and, presumably, earned more than minimal profits. Thus, substantial awards were "necessary to discourage defendants from continuing to engage in their illicit conduct." *Id.* at *17-18.

### c. *Factual Analysis Of North Atlantic's Request*

Many of the foregoing aggravating factors are present here, justifying North Atlantic's damages request:

- North Atlantic has exclusive rights to eight registered ZIG-ZAG® and NAOC® Trademarks, which are each famous and valuable, and which represent decades of historical investments by North Atlantic and its predecessor-in-interest since 1938. Compl. ¶¶ 227-233.

17

- North Atlantic owns the NAOC© Copyright and exclusive rights to the ZIG-ZAG® Orange Trade Dress, which are famous and valuable in their own right. *Id.* ¶¶ 234-236 (copyright), 237-242 (trade dress).

- Each and every counterfeit product sold by Defendants, including the Non-Responding Defendants, bears: (1) all eight ZIG-ZAG® and NAOC® Trademarks, (2) the NAOC© Copyright, and (3) the ZIG-ZAG® Orange Trade Dress, for a total of ten infringed source identifiers. *Id.* ¶¶ 246, 252.

- The counterfeit papers and packaging are inferior to authentic products, and, by definition, have not been subjected to any known quality control standards. In contrast, North Atlantic's strict and exacting standards define its hard-earned reputation as the exclusive source of all high-quality ZIG-ZAG® cigarette paper products in the United States. *Id.* ¶¶ 248-258.

- All Non-Responding Defendants directly sold counterfeit ZIG-ZAG® cigarette paper products to North Atlantic. These are just the sales North Atlantic knows about. Realistically, each group of Non-Responding Defendants sold much more. *Id.* ¶¶ 263-279. However, North Atlantic will never know how much more, because the Non-Responding Defendants never answered or gave North Atlantic the benefit of discovery.

- The counterfeiting also appears willful because (i) the prices are extremely low compared to the lowest prices available for authentic products (usually less than half); (ii) the counterfeit products originate in China, not France, as the packaging states; and (iii) the counterfeit products are not obtained through authorized distribution channels, that is, <u>not</u> from North Atlantic, the exclusive rights holder. *Id.*¶¶ 280-287.

Deterrence is a strong factor, because the realities of Internet selling mean that non-compliant defendants can continue to be "fly-by-night" counterfeiters, and ignore North Atlantic's enforcement action and injunction, by re-opening shop under a different account handle, using a different e-mail address, using a different

18

online platform, etc., and hoping North Atlantic will not notice.  Sellers frequently do this when their accounts receive too much negative feedback, often because of counterfeiting.

Given these facts, the loss of profits (at least one-for-one sales), the damage to North Atlantic's reputation, the devaluation of North Atlantic's investments in its marks, and the certainty of consumer confusion, North Atlantic requests $200,000 in statutory damages under the Lanham Act.

## F. The Court Should Award Reasonable Fees And Costs

North Atlantic also moves for an award of reasonable attorneys' fees and costs under the Lanham Act (15 U.S.C. § 1117) or Copyright Act (17 U.S.C. § 505). Under the Lanham Act, the Court may award both attorneys' fees and costs, and statutory damages if infringement is willful, which it is.  *See, e.g., Microsoft Corp.*, 115 F. Supp. 2d at 812.  The Court also may award reasonable attorneys' fees to the "prevailing party" under the Copyright Act.  17 U.S.C. § 505.  Courts routinely hold that the award of full costs under the Copyright Act is mandatory. Also, as part of an attorneys' fees award, a plaintiff may recover its reasonable investigative fees.  *See, e.g., Fila U.S.A. v. Run Run Trading Corp.*, No. 95 Civ. 7144, 1996 WL 271992, at *11 (S.D.N.Y. May 21, 1996). If the Court grants default judgment, then North Atlantic will be the prevailing party in this case. And, North Atlantic has tried hard to minimize fees and costs, and litigate without waste.

Thus, an award of attorneys' fees and costs (including investigator costs) is appropriate.

**G. The Court Should Continue Alternative Service Via Email**

The Court should continue permitting North Atlantic to serve Defendants and necessary third parties via email, other electronic means, and/or by overnight courier for the reasons discussed in the Court's Order granting temporary restraining order and additional relief (*see* DKT. 16, pgs. 9-10), because the same factors justifying alternative service of the T.R.O., justify alternative service of further papers and proceedings in the action.

**H. The Court Should Release The Bond And Enter Permanent Injunctions**

Finally, the Court should issue an order releasing the bond and converting the preliminary injunctions against the Non-Responding Defendants into permanent injunctions. As North Atlantic has argued and this Court has held, injunctive relief is appropriate to prevent ongoing irreparable harm to North Atlantic, its brands, and consumers from counterfeiting—and nothing has changed to alter that conclusion. An injunction serves the public interest, because public policy disfavors trademark infringement and counterfeit products (because it interferes with brand owners' and consumers' rights). Finally, the balance of hardships favors entry of permanent injunctions, because North Atlantic needs permanent injunctions to continue to hold the Non-Responding Defendants

accountable. In contrast, the Non-Responding Defendants would not be enjoined from any lawful activity, including lawfully operating legal businesses. No Non-Responding Defendant—or any defendant—has a protected interest in counterfeiting.

## **CONCLUSION**

For the reasons discussed above, North Atlantic respectfully requests that this Court grant North Atlantic's Motion in full, enter default judgment against the Non-Responding Defendants, award North Atlantic statutory damages, award attorneys' fees and costs in an amount to be determined, continue alternative service, release the bond and enter permanent injunctions against the Non-Responding Defendants, and grant all other, further relief in North Atlantic's favor this Court deems just or proper.

(Signatures appear on following page.)

Dated:   January 22, 2019     Respectfully submitted,

By:  /s/ Lyndsay S. Ott
WARNER NORCROSS + JUDD LLP
Lyndsay S. Ott (P72949) (lott@wnj.com)
45000 River Ridge Drive, Suite 300
Clinton Twp., Michigan 48038
Tel.: 248-784-5080

OF COUNSEL:
Marcella Ballard (MBallard@Venable.com)
Victoria R. Danta (VRDanta@Venable.com)
VENABLE LLP
1270 Avenue of the Americas, 24th Fl.
New York, NY 10020
Tel.: 212-307-5500

*Attorneys for Plaintiffs North Atlantic
Operating Company, Inc. and
National Tobacco Company, L.P.*

22

# CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2019, I caused a true and correct copy of Plaintiffs' Motion for Default Judgment and Related Relief, Brief in Support, Declaration of John Hood in Support of Plaintiffs' Motion for Default Judgment and Declaration of Lyndsay S. Ott in Support of Plaintiffs' Motion for Default Judgment to be served on the following Defendants via first class mail to any known physical/mailing addresses as follows.

Nichole Roundtree, Yaqun Sun,
Chinadirect International Trading Co
Amazon Seller NicholeRoundtree and
Amazon Seller Co-Co-Code
1883 1st Street
Cheney, WA 99094

Amazon Seller PTL Sales
884 Saxory Road
Encinitas, CA 92024

Amazon Seller SZ POWER
15402 Misty Forest Ct.
Houston, TX

Ray Farooqui and eBay Seller rafarooqu0
Mohammad Farooqui
3207 Ciderwood Dr.
Spring, TX 77373

Sam Chawla and eBay Seller schawla5
Surinder Chawla
4324 Main St.
Bridgeport, CT 06606

Jack Krenicki, Andrew Krenicki Sr.,
Gifts 2 Shop, eBay Seller giftstoyourdoor,
eBay Seller cardsfrfun, Amazon Seller
gifts2shop,
Bonanza Seller giftstoshop, and Bonanza
Seller
Backstrecords, Andrew Jack Krenicki
112 Harwinton Ave.
Terryville, CT 06786

Jack Krenicki, Andrew Krenicki Sr.,
Gifts 2 Shop, eBay Seller giftstoyourdoor,
eBay Seller cardsfrfun, Amazon Seller
gifts2shop,
Bonanza Seller giftstoshop, and Bonanza
Seller
Backstrecords, Andrew Jack Krenicki
114 Harwinton Ave.
Terryville, CT 06786

I further certify that I electronically filed this certificate of service using the Court's

CM/ECF system, which will send notification to all attorneys of record.

/s/ Denise Keilch
Denise Keilch
Assistant to Lyndsay S. Ott, Esq.
Warner Norcross & Judd LLP
Co-counsel for Plaintiffs
45000 River Ridge Dr., Suite 300
Clinton Twp., MI 48038

18052087

24